Alfred Charles Moore appeals from a summary judgment entered in favor of the defendants, Benjamin Reeves, Robert Patterson, Geno D'Andrade, and James Patterson. We reverse and remand.
The summary judgment was proper in this case if there was no genuine issue of material fact and the defendants were entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on the defendants to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to the plaintiff to present evidence creating a genuine issue of material fact, so as to avoid entry of a judgment against him. In determining whether there was a genuine issue of material fact, this Court must view the evidence in the light most favorable to the plaintiff and resolve all reasonable doubts against the defendants.Wakefield v. State Farm Mutual Automobile Ins. Co.,572 So.2d 1220 (Ala. 1990). Because this action was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12. "Substantial evidence" *Page 175 
is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); § 12-21-12.
The evidence, viewed in the light most favorable to Moore, as required under the applicable standard of review, reveals the following:
At the time of the accident made the basis of this appeal, Moore, who was 70 years old, was employed as a security guard or security officer by Oakwood Seventh Day Adventist Church School System, Inc., a corporation, doing business as Oakwood College ("the college"), in Huntsville, Alabama. As part of his duties, Moore patrolled the campus at the college. Defendant James Patterson was a sergeant with the security department at the college and was Moore's immediate supervisor; he was responsible for maintaining and repairing the vehicles in the security department. Defendant D'Andrade was the safety director at the college, and he had assigned the responsibility for maintaining and repairing the vehicles in the security department to James Patterson. D'Andrade reported to and answered to defendant Robert Patterson, who was vice-president of finance of the college. Defendant Reeves was the president of the college.
On the date of the accident, when Moore arrived for his shift, he was informed that his normal patrol vehicle needed repair and was not usable; therefore, James Patterson gave Moore the keys to a 1976 Plymouth station wagon and instructed him to use that vehicle to patrol the campus.[1] Moore previously had refused to drive the 1976 Plymouth, because, he said, it was "junk"; it was, according to Moore, in a state of disrepair. Specifically, the driver's door of the 1976 Plymouth would come open, if it were not closed securely and locked, so that the driver had to hold the door in order to keep it from opening. D'Andrade and James Patterson were aware that the door and the door closure mechanism of the 1976 Plymouth did not function properly; they had been aware of this problem for several months prior to the accident, but had not repaired the door. D'Andrade had issued an order precluding the use of the 1976 Plymouth on patrol duty and directly instructing James Patterson to inform Moore not to use that vehicle, because it was "unsafe" — that is, the door "went bad." James Patterson had indicated that at the time of Moore's accident, "because it was not the best vehicle, [it was] used . . . for stake-outs, just for parking, surveillance." Although this problem had existed for several months prior to the accident, on the day of Moore's accident, at the insistence of James Patterson and after having registered a complaint regarding its safety, Moore used the 1976 Plymouth to patrol the campus. Because the door would not close properly, Moore drove the 1976 Plymouth while holding the door shut with his elbow on the outside. As he was rounding a curve, the door came open; he fell out; as he fell out, his foot became caught between the accelerator and the brake pedal; and he was dragged along by the vehicle until it crashed into a tree. As a result, Moore sustained injuries to his back.
Moore sued the defendants under Ala. Code 1975, §25-5-11(c)(2) (a provision of the Alabama Workmen's Compensation Act), alleging that the injuries he sustained from the accident resulted from the inoperable condition of a safety guard or device upon the vehicle he was driving — that the mechanism designed and installed by the manufacturer of the vehicle to keep the door closed while the vehicle was being operated, thus keeping passengers inside the vehicle during its operation, was inoperable for a significant time preceding the accident made the basis of this suit.
We note that this case appears to be conceptually different from the majority of workmen's compensation cases filed pursuant *Page 176 
to § 25-5-11(c)(2), which involve a safety guard or device on a machine in a factory-type, industrial setting, such as Harrisv. Gill, 585 So.2d 831 (Ala. 1991) (a case in which an employee sued his supervisory co-employees for "bypassing" palm control buttons on a punch press designed to cut metal collars, which buttons were intended as a safety device or safety guard to protect the employee from injury). See, also, Bailey v. Hogg,547 So.2d 498 (Ala. 1989), and Williams v. Price, 564 So.2d 408
(Ala. 1990). In this case, Moore, as the employee, sued the defendants, as his co-employees, for failing to maintain and/or repair the door and door closure mechanism on the vehicle he had to operate in order to patrol the campus, which was the job for which he was employed. Although not involving the more common machine in the more common industrial setting, the facts of this case nonetheless support an action under §25-5-11(c)(2).
Section 25-5-11(c)(2) reads as follows:
"(c) As used herein, 'willful conduct' means:
". . . .
 "(2) The willful and intentional removal from a machine of a safety guard or device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from such removal; provided, however, removal of such a guard or device shall not be willful conduct unless such removal did, in fact, increase the danger of the use of the machine and was not done for the purpose of the repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
In Creel v. Bridewell, 535 So.2d 95, 97 (Ala. 1988), this Court held that "[a] duty to provide co-employees with a safe workplace naturally encompasses a duty to provide co-employees with machines that function properly and safely." Thus, pursuant to the provisions of § 25-5-11(c)(2) and based on the well-settled law in Alabama, it was incumbent upon Moore to present substantial evidence that the defendants willfully and intentionally removed from the machine the safety guard or device provided by the manufacturer of the machine with knowledge that injury would likely or probably result from the removal. See Harris v. Gill, supra.
Moore contends that the willful and intentional failure to maintain or repair a safety guard or device that renders the guard or device inoperable or ineffective, is the equivalent of the "removal" of or the "failure to install" a safety guard or device within the purview of § 25-5-11(c)(2). Moore contends that the door and door closure mechanism of the 1976 Plymouth he was driving was as ineffective at keeping him inside the vehicle as if it had been removed; that the undisputed evidence establishes that his injuries resulted from the inoperable condition of that vehicle, because the door and door closure mechanism did not operate properly; and that that condition had existed for some time prior to his accident. He further contends that he presented substantial evidence that he was instructed to use the 1976 Plymouth in spite of its dangerous condition, with full knowledge on the part of the defendants that the vehicle was unsafe to operate and that operating it would result in injury.
The defendants contend that Moore failed to make out a prima facie case under § 25-5-11(c)(2). According to the defendants, this case does not even involve a safety guard or device as specified in § 25-5-11(c)(2). They contend that to hold that a door and door closure mechanism of a vehicle is a safety guard or device would implicitly extend the definition of those two terms "to encompass every aspect of a piece of machinery, which, in case of its malfunction, could result in an injury to an employee" and, therefore, "would result in a proliferation of co-employee suits." They also contend that Moore failed to present any evidence that the defendants, in allowing the door and door closure mechanism to remain unrepaired, knew that injury or death would likely or probably result.
Thus, ever mindful of, and consistent with, the well-established law that the Alabama *Page 177 
Workmen's Compensation Act is to be construed liberally to effect its beneficent purposes, resolving all reasonable doubts in favor of the claimant, Riley v. Perkins, 282 Ala. 629,213 So.2d 796 (1968); Tiger Motor Co. v. Winslett, 278 Ala. 108,176 So.2d 39 (1965), we must first determine, under the facts of this case, whether the door and door closure mechanism of a particular vehicle is a safety guard or device within the purview of § 25-5-11(c)(2).
The defendants contend that the terms "safety device" and "safety guard" refer to equipment installed on a machine for the primary purpose of guarding against a dangerous aspect of the machine and that a door and door closure mechanism of a vehicle does not qualify.
Moore contends that the door and door closure mechanism does qualify as a safety guard or device, because it was perfected to keep the door secure during the operation of the vehicle in order to protect the occupants of the vehicle from injury.
The legislature did not define the terms "safety device" and "safety guard"; there are no Alabama cases directly on point; and a careful research of other jurisdictions revealed nothing definitive. Therefore, for purposes of this appeal, noting that these terms are of general significance, and that their application is to be ascertained from the particular machine in controversy and the nature of the peril involved, we have undertaken to define the terms "safety device" and "safety guard" for purposes of § 25-5-11(c)(2).
"Device" is defined as "[an] invention or contrivance; any result of design," Black's Law Dictionary 452 (6th ed. 1990); "something devised or constructed for a particular purpose,"The American Heritage Dictionary of the English Language 361 (1969); "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function," Webster's NewCollegiate Dictionary 309 (1981).
"Guard" is defined as "any device or apparatus that prevents injury, damage, or loss; an attachment or covering put on a machine to protect the operator," The American HeritageDictionary of the English Language 584 (1969); "a protective or safety device; specif: a device for protecting a machine part or the operator of a machine," Webster's New CollegiateDictionary 505 (1981).
"Safety" is defined as "contributing to or insuring safety; protective," The American Heritage Dictionary of the EnglishLanguage 1142 (1969).
Thus, combining the above definitions of the above terms — "device," "guard," and "safety" — we conclude that the terms "safety device" and "safety guard" mean an invention or contrivance intended to protect against injury, damage, or loss that insures or gives security that an accident will be prevented. Therefore, for purposes of construing these terms within § 25-5-11(c)(2), we hold that a "safety device" or "safety guard" is that which is provided, principally, but not exclusively, as protection to an employee, which provides some shield between the employee and danger so as to prevent the employee from incurring injury while he is engaged in the performance of the service required of him by the employer: it is not something that is a component part of the machine whose principal purpose is to facilitate or expedite the work.
Applying the above to the facts of this case (wherein the machine was the vehicle Moore was driving to patrol the campus, and the peril was the set of circumstances that caused Moore to sustain injuries), we hold that the door and door closure mechanism of the vehicle in which Moore was driving constituted a safety device or safety guard; it constituted a shield between Moore and danger so as to protect him from the injuries he sustained while he was patrolling the campus in performance of the services required of him by the college.[2]
The issue now becomes whether the failure to repair and/or maintain a safety *Page 178 
guard or device constitutes "removal" within the purview of § 25-5-11(c()2).
In Bailey v. Hogg, 547 So.2d 498, 500 (Ala. 1989)[3], this Court emphasized the important public policy of promoting safety in the workplace and the importance of safety guards and safety devices in promoting that public policy:
 "The same dangers are present when an available safety guard is not installed as are present when the same guard has been removed. To say that an injury resulting from the willful and intentional removal of a safety guard is actionable but that an injury resulting from the willful and intentional failure to install the same guard is not contravenes that important public policy. To hold that the willful and intentional failure to install an available safety guard is not actionable would allow supervisory employees to oversee assembly of new machinery, instruct their employees not to install the safety guards, and then, when an employee is injured due to the lack of a safety guard, claim immunity from suit."
See, Williams v. Price, supra (a case in which this Court refused to extend the concept of "removal" under §25-5-11(c)(2) to include instructions pertaining to safety procedures, whether given or not given). See, also, Harris v.Gill, supra (a case in which we held that the act of "bypassing" a safety device of a particular machine that would prevent an injury was encompassed within the word "removal").
The defendants contend that, even if the door and door closure mechanism constituted a safety guard or device under the facts of this case, that safety guard or device had not been removed, but was simply operating ineffectually — that, at most, the defendants failed to correct a situation that was possibly unsafe. They contend that the act of failing to repair and/or maintain the door and door closure mechanism does not establish a prima facie case of willful conduct as defined in §25-5-11(c()2). Rather, they contend that, in order to establish such willful conduct, there must be a "removal" of a safety guard or device, or its equivalent, "the failure to install" a safety guard or device. See, Bailey v. Hogg, supra; Williams v.Price, supra; and Harris v. Gill, supra.
Moore contends that just as this Court recognized inBailey v. Hogg, supra, that the same danger existed to an employee when an available safety guard or device was not installed as when it was removed — that in either case, because the safety guard or device was rendered ineffective, public policy indicated by the legislature dictates that such conduct is actionable — under the facts in this case, this Court should recognize and hold that the willful and intentional failure to maintain and/or repair a "safety guard" or "safety device," thereby rendering it inoperable, is as dangerous as the "removal" or "failure to install" that safety guard or device. In other words, Moore contends that the safety guard or device provided by the manufacturer (in this case, the safety guard or device was the door and door closure mechanism on the vehicle he was driving) was just as ineffective in keeping him inside the machine that he operated (in this case, the machine was the vehicle he drove to patrol the campus) as if it had been removed.
In light of the facts before this Court, having read and reread those cases brought under § 25-5-11(c)(2); having considered the rationale of this Court's holdings in those cases; having considered the legislative purposes in enacting the Workmen's Compensation Act, specifically its intent in providing employees a cause of action for the willful conduct of co-employees in the workplace, we hold that the failure to maintain and/or repair a safety guard or device provided by the manufacturer of a particular machine would be tantamount to the "removal of" or the "failure to install" a safety guard or device. To hold otherwise would allow supervisory employees to neglect the maintenance and repair of safety *Page 179 
equipment provided to protect co-employees from injury, which by its very nature is a clear violation of public policy.
Based on the foregoing, after reviewing the record in the light most favorable to Moore and resolving all reasonable doubts in his favor, we hold that the trial court erroneously entered the summary judgment in favor of the defendants on Moore's claim under § 25-5-11(c)(2). Therefore, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
[1] The undisputed evidence established that there was no safety belt provided in the station wagon.
[2] If the legislature intended a more restrictive definition of the terms "safety guard" or "safety device," it can enact appropriate legislation for this purpose.
[3] Although the author of this opinion dissented in the holding in Bailey v. Hogg, 547 So.2d 498 (Ala. 1989), disagreeing with the rationale of the Court in its holding, that holding is the law; and the author is bound by stare decisis to follow that law and is bound to follow any rational and logical extension thereof.