JOHNSTONE, Justice.
Plaintiff Jerome Pettibone appeals from a judgment entered in favor of defendant coemployee Dwayne Tyson on Pettibone’s claim that §§ 25-5-ll(b) and 25-5-11(c)(2), Ala.Code 1975, made Tyson liable for his failure to maintain and/or to repair the brakes on their employer’s van.[1] We address Pettibone’s objection to a jury instruction that increased the scienter essential to his cause of action against Tyson.
Pettibone sued Tyson under § 25-5-11(b), which provides in pertinent part:
“(b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any ... employee of the same employer ..., the employee shall have a cause of action against such person....”
“Willful conduct” is defined in § 25-5-11(c)(2):
“The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.”
At the trial by jury, Pettibone objected to the trial judge’s jury instruction on “willful conduct.” The jury returned a verdict in favor of Tyson. Pettibone moved for a new trial on the ground, inter alia, of the same objection — that the trial judge erred in her instruction to the jury on the burden of proof in a § 25 — 5—11(c)(2) case.[2] The trial judge denied the motion. We reverse and remand.
At the time of the accident, Packard Hughes Interconnect, Inc. (“PHI”) employed Pettibone and Tyson, who was PHI’s lead maintenance technician. Tyson was responsible for the proper maintenance of the company van and for the timely repair of any reported problem. On June 12, 1996, while making a delivery run in a PHI van, Pettibone drove down a hill and applied the brakes to stop for a traffic signal. Because the brakes of the company van failed, the van struck a pick *379 up truck. Pettibone and the other driver were both severely injured in the collision.
At trial, another PHI employee, Paul Maxwell, testified that, on three occasions before the date of Pettibone’s accident, he had reported the van’s brake problems to Tyson, who stated that he had experienced the same problem himself. Pettibone contended that Tyson had willfully failed to repair the brakes or to have the brakes repaired and that Tyson had allowed the company van to remain in service in its dangerous condition. Petti-bone contended also that Tyson’s failure to repair the van’s brakes amounted to a “willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer” as defined in § 25 — 5—11(c)(2), Ala.Code 1975. Petti-bone alleged that Tyson’s conduct was tor-tious only as it related to § 25-5-11 (c)(2), not as to subsection (c)(1).
This case is analogous to that reported in Moore v. Reeves, 589 So.2d 173 (Ala.1991). In Moore, Moore was injured when the driver’s side door to his vehicle opened because the defendant, his supervisor, had faded to repair the door. Moore’s supervisor was responsible for maintaining and repairing the vehicles in his department. Moore’s supervisor had known about the driver’s side door problems, but had not made repairs. The director of safety had once issued an order precluding the use of the vehicle, because the driver’s side door made it unsafe. In Moore, this Court held that “the failure to maintain and/or repair a safety guard or device provided by the manufacturer of a particular machine [is] tantamount to the ‘removal of ... a safety guard or device.” 589 So.2d at 178.
Pettibone contends that the trial court erred in incorporating the greater scienter requirement of “intent to injure” from § 25 — 5—11 (c)(1) into the court’s oral charge to the jury in this subsection (c)(2) case. Pettibone argues that when a court incorporates the “intent” requirement of subsection (c)(1) into subsection (c)(2) it confuses the separate fields of operation that the Legislature intended for the two subsections.
This Court addressed the distinction between subsections (c)(1) and (c)(2) in Haisten v. Audubon Indemnity Co., 642 So.2d 404 (Ala.1994). There this Court explored the definition of “willful conduct” under these subsections and noted the explicit distinction between the scienter requirements of subsection (c)(2) and those of subsection (c)(1). In Haisten, the widow of a construction company employee who died when a trench collapsed on him while he was working sued the owner of the company and the project engineer. She alleged that the owner and the project manager had willfully removed a safety device from the trench and that § 25-5-11(c)(2) made them liable for her husband’s death. Audubon, the construction company’s insurer, sought a judgment declaring that the company’s insurance policy provided no coverage to the owner-insured or the project engineer. Invoking the “intended acts” exclusion of the insurance policy, Audubon argued that Haisten could recover only if she proved “willful conduct” as defined in § 25 — 5—11(c)(1). Thus, Audubon argued, Haisten’s claim would necessarily be excluded from coverage since the insurance policy did not cover injuries “expected or intended from the standpoint of the insured.” Haisten, 642 So.2d at 406.
The Haisten trial court entered judgment for Audubon on the ground that it was not obligated to provide coverage for the acts alleged in Haisten’s complaint. This Court reversed the trial court, 'explaining the distinction between the scien-ter requirements of subsections (c)(1) and (c)(2):
*380 “The [trial] court, in agreeing with this argument, treated the claims as falling under § 25 — 5—11(c)(1), which defines ‘willful conduct’ as ‘A purpose or intent or design to injure another.... ’ The [trial] court appears to have read Reed v. Brunson, 527 So.2d 102, 119 (Ala.1988), as incorporating this portion of § 25 — 5—11(c)(1) into (c)(2)....
“After discussing Reed v. Brunson and other cases the trial court concluded:
[[Image here]]
“ ‘In other words, Elizabeth Haisten can only recover against James H. Bunt if she alleges and proves willful conduct (the design, intent and purpose to inflict injury by Bunt); such proof would have the effect of excluding coverage for such liability by Audubon.’
“This conclusion is a misreading of the separate fields of operation of § 25-5-11(c)(1), (c)(2), and (c)(4). As shown by the above quotations, neither (c)(2) nor (c)(4) requires a purpose, intent or design to injure. See, e.g., Harris v. Gill, 585 So.2d 831 (Ala.1991); Pressley v. Wiltz, 565 So.2d 26 (Ala.1990); Bailey v. Hogg, 547 So.2d 498 (Ala.1989). Subsection (c)(2) requires ‘willful and intentional removal ... of a ... safety device ... with knowledge that injury or death would likely or probably result.’ Subsection (c)(4) requires ‘[w]illful and intentional violation of a ... safety rule’ after notice of prior violations.
[[Image here]]
“While the [trial] court may be correct in holding that a recovery under § 25-5-11(c)(1) would preclude a finding that injury was not expected or intended from the standpoint of the insured, that question is not presented in this case, because Mrs. Haisten has not sought recovery under subsection (c)(1). Subsection (c)(2) at least arguably allows recovery under a finding that a reasonable person had or should have had ‘knowledge that injury or death would likely or probably result,’ even if the defendant co-employee did not subjectively expect or intend to cause injury. Subsection (c)(4) does not require an intent to injure or an expectation of injury on the part of the offending employee; it requires only that the notice of the violation state ‘[t]hat the violation places the notifying employee at risk of great injury or death.’ Under either of these provisions [(c)(2) or (c)(4)], the offending employee could subjectively believe that the safety device or rule was ineffectual or unnecessary and that no harm would come from the removal of the device or from the violation of the rule, and yet be liable under an objective standard. In such a case, the exclusion of injuries ‘expected or intended from the standpoint of the insured’ would not exclude coverage.”
Haisten, 642 So.2d at 406-07. Thus, a court which incorporates the “intent” requirement of subsection (c)(1) into subsection (c)(2) confuses the separate fields of operation that the Legislature intended. Id.
The pertinent portion of the trial court’s jury instruction reads:
“Now ladies and gentlemen, at this time I want to charge you concerning the specific law applicable in this case. The defendant in this case is an employee, a co-employee of the plaintiff or of the plaintiffs former employer, and is liable only for willful conduct which results in or proximately causes injury to the plaintiff.
“Willful conduct, as it applies to this case, is defined as follows: The willful and intentional removal from a machine of a safety guard or safety device pro *381 vided by the manufacturer or the willful and intentional failure to install on a machine an available safety guard or device provided by the manufacturer with knowledge that injury or death would likely or probably result from such removal or failure to install, provided, however, that removal of such guard or safety device shall not be willful conduct unless its removal did, in fact, increase the danger of the use of the machine and was not done for the purpose of repair of the machine or was not a part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.
“Now, with regard to that, the law in this state provides: The failure to maintain and/or repair a safety guard or device provided by the manufacturer of a particular machine would be tantamount to the removal of or the failure to install a safety guard or device.
“Additionally, evidence showing only a knowledge or an appreciation of a risk of injury will not entitle a plaintiff to a determination of whether the co-employee acted with a purpose, intent, or design to injure another. A co-employee must either have actual knowledge that an injury will occur from his actions or have substantial certainty that an injury will occur.
“The burden of proof is on the plaintiff to reasonably satisfy you from the evidence that the defendant was guilty of willful conduct as I have defined that to you and that that conduct proximately caused injury to him.” (Emphasis added.)
This Court has consistently distinguished between the “intent to injure” burden imposed by subsection (c)(1) and the lesser scienter burden imposed by subsection (c)(2). See Haisten, supra; Harris v. Gill, 585 So.2d 831 (Ala.1991); Pressley v. Wiltz, 565 So.2d 26 (Ala.1990); Bailey v. Hogg, 547 So.2d 498 (Ala.1989). In these cases, this Court has applied what was first enunciated by the Legislature in § 25 — 5—11(c)(2), Ala.Code 1975, that a plaintiff does not bear the burden of proving “intent to injure” under § 25-5-11(c)(2). The trial court’s instruction was an incorrect statement of the law that undermined the sole theory of liability in the plaintiffs case.
It is settled law that a party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be ground for a new trial. Cain v. Mortgage Realty Co., 723 So.2d 631, 633 (Ala.1998) (quoting Nunn v. Whitworth, 545 So.2d 766, 767 (Ala.1989)). Here, the trial judge erred to reversal in instructing the jury on the fundamental law governing Pettibone’s case.
For the reasons stated, the judgment must be reversed and the cause remanded for proceedings consistent with this opinion. Because the judgment is being reversed and the cause remanded, we do not address the second issue raised on appeal.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, HARWOOD, and WOODALL, JJ., and GORDON, Special Justice, * concur.
SEE and BROWN, JJ., dissent.
LYONS and STUART, ** JJ., recuse themselves.

. Pettibone sued Packard Hughes Interconnect, Inc. (“PHI’'); Parkway Buick, Inc.; two PHI employees, Kay Arnett and Bick Lesser; and Dwayne Tyson. Prior to trial, the claims against all defendants except Tyson were dismissed either by court order or by stipulation of the parties.

. Pettibone also contended that the trial court erred in refusing to admit certain evidence of post-accident repairs made by a nonparty.