Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

———————————————

### SC-2025-0443

———————————————

## Ex parte Mike Griffin, Eddie Pate, and Scott Engle

## PETITION FOR WRIT OF MANDAMUS

## (In re: Gary Jackson

## v.

## Mike Griffin et al.)

## (Jefferson Circuit Court: CV-23-901453)

STEWART, Chief Justice.

PETITION DENIED. NO OPINION.

Shaw, Bryan, Mendheim, and McCool, JJ., concur.

Cook, J., concurs specially, with opinion.

Wise and Sellers, JJ., dissent.

COOK, Justice (concurring specially).

Gary Jackson was seriously injured when his hand got caught in a leveler machine at a facility owned by his employer, Alabama Metal Industries Corporation ("AMICO"). Jackson later sued several of his coworkers, alleging that they were responsible for his injury.

Jackson's co-workers moved for a summary judgment in their favor, alleging immunity under Alabama's workers' compensation laws. In response, Jackson argued that, because his injury was caused by the willful removal of a safety device from the machine by one of his coworkers, the immunity provided under Alabama's workers' compensation laws did not apply.

After the Jefferson Circuit Court denied the coworkers' summary-judgment motion, they petitioned this Court for a writ of mandamus. As explained below, I am uncertain that the facts in this case satisfy the narrow exception to immunity in Alabama's workers' compensation laws for willfully removing a "manufacturer provided" safety guard. However, I reluctantly concur because of our mandamus standard and because the circuit court did not have the opportunity to review this argument fully.

I am also concerned that our caselaw may be inconsistent with the

3

text of § 25-5-11(c)(2), Ala. Code 1975, which requires "willful and intentional" conduct. As I explain below, these issues, as well as the issue of stare decisis, are best left for full briefing during an appeal of this or a future case.

<u>Facts and Procedural History</u>

Jackson began working at AMICO's facility, a metal-manufacturing and -processing plant in Birmingham, in 2012. One day in September 2021, he was working the metal-process line, which included flattening metal by using a leveler machine, a flattener machine, and a conveyor belt between them.

AMICO originally purchased the leveler, used, in the late 1990s. AMICO placed the leveler near the flattener and added a conveyor belt between the two to help facilitate the metalworking process. AMICO also fabricated two other additions to the machine -- a funnel and wings -- that helped guide the metal straight into the leveler. AMICO further added a safety bar that went across the machine at the point where the metal is fed into the machine.[1] The process line as a whole and the leveler

_____

[1]The coworkers vigorously dispute that the alleged safety guard even existed before the accident (much less that they removed it). For instance, one coworker insists that he <u>created the safety bar after the</u>

at issue had been in operation at AMICO's facility for over 30 years before the incident involving Jackson, and there had been no prior injuries reported.

On the day of his injury, Jackson was feeding some metal into the leveler from the conveyor belt when his left hand went into the machine. As a result, Jackson lost three fingers.

Jackson thereafter commenced an action against AMICO, seeking workers' compensation benefits under Alabama's Workers' Compensation Act ("the Act"), § 25-5-1 et seq., Ala. Code 1975, which resulted in a settlement. Jackson then commenced an action in the circuit court against several of his coworkers, Mike Griffin, Eddie Pate, and Scott Engle ("the defendants"),[2] claiming that they were liable for his

---

accident. The coworkers also argue that there is no testimony by anyone regarding the identity of any specific person who removed a safety guard. However, Jackson cites other testimony that the safety bar existed before the accident and insists that "[t]here is overwhelming evidence" that the safety guard was present "as some point prior to the accident."

[2]Originally, five of Jackson's coworkers were parties to the suit. Jackson dismissed one of them. Another was left out of the caption of Jackson's second amended complaint and subsequently left out of the motion for a summary judgment at issue in this case. Thus, only three coworkers -- Mike Griffin, Eddie Pate, and Scott Engle -- are parties to the present petition.

injury.

Normally, co-employees are not liable for their coworkers' injuries. See § 25-5-53, Ala. Code 1975. However, under the Act, an employee who suffers a workplace injury can bring a cause of action against a co-employee whose willful conduct contributed to the employee's injury. See § 25-5-11(b), Ala. Code 1975. Subsection (c) of § 25-5-11 lists several scenarios where co-employee conduct can be deemed willful.

In his complaint, Jackson alleged that the "willful conduct" in this case involved "[t]he willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal." § 25-5-11(c)(2) (emphasis added).

After the close of discovery, the defendants moved for a summary judgment in their favor, claiming that the above exception did not apply to them and that they were, thus, immune from liability under the Act. In particular, the defendants argued that AMICO was not the "manufacturer" of the leveler. They also argued, among other things, that, regardless of AMICO's status, there was no substantial evidence to suggest that any one of them willfully and intentionally removed the

6

safety bar and caused Jackson's injury.

In response, Jackson argued that AMICO became the manufacturer when it added the conveyor belt, funnel, wings, and safety bar to the leveler, thus essentially creating a "new machine" and making the leveler more dangerous. He also relied upon theories in existing Alabama caselaw that consider a "removal" to have occurred even when there is not a physical removal by the defendant. Those include a failure to install (or reinstall), a failure to maintain/repair, or a bypassing of a safety device.

Finally, relying on prior caselaw from our Court, Jackson argued that the "willful and intentional" <u>mens rea</u> requirement in the Act is satisfied for purposes of creating a jury question if a co-employee "<u>knew or should have known</u>" of the removal instead of having personally effected the removal. (Emphasis added.)

The circuit court denied the defendants' motion for a summary judgment. They then petitioned this Court for a writ of mandamus.

Standard of Review

A petitioner seeking the drastic and extraordinary remedy of a writ of mandamus must demonstrate all four of the following to warrant the

7

issuance of a writ: "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020)(quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001), citing in turn Ex parte Inverness Constr. Co., 775 So. 2d 153, 156 (Ala. 2000)).

A petition for a writ of mandamus is an appropriate method by which to seek review of the denial of a summary-judgment motion that is based on a claim of immunity arising under § 25-5-53 of the Act. See Ex parte Tenax Corp., 228 So. 3d 387, 391 (Ala. 2017). However, in reviewing such a petition, this Court considers only the issue of immunity. See Ex parte Morgan, 392 So. 3d 33, 41 (Ala. 2023)(explaining that this Court "will entertain a mandamus petition that challenges the denial of a summary-judgment motion when the petition is grounded on a claim of immunity, but we confine our review of such a petition to the issue of immunity").

This Court reviews de novo a trial court's decision to deny a summary-judgment motion; however, we "'"must review the record in a

8

light most favorable to the nonmovant and must resolve all reasonable doubts against the movant."'" Ex parte Canada, 890 So. 2d 968, 970 (Ala. 2004)(quoting Wilson v. Manning, 880 So. 2d 1101, 1102 (Ala. 2003), quoting in turn Hobson v. American Cast Iron Pipe Co., 690 So. 2d 341, 344 (Ala. 1997)). Our task is to determine "'"whether the evidence presented to the trial court created a genuine issue of material fact"' and whether the moving party is entitled to prevail as a matter of law." Id. (quoting Potter v. First Real Estate Co., 844 So. 2d 540, 545 (Ala. 2002), quoting in turn Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So. 2d 369, 372 (Ala. 2000)).

## Discussion

### I. The Argument that AMICO is Not the "Manufacturer" of the Leveler Machine.

As noted above, the Act allows co-employee liability for removing safety devices that are "provided by the manufacturer of the machine." § 25-5-11(c)(2) (emphasis added). The operative complaint expressly pleads that the relevant safety guard here was "manufacturer provided."

The parties agree that AMICO did not originally manufacture the leveler but that it purchased the machine, used, approximately 30 years ago. The parties also agree that there is no evidence indicating that the

9

original manufacturer provided the safety guard at issue in this case. Thus, under a strict textual reading of the statute, summary judgment is due.

However, in his response to the defendants' summary-judgment motion, Jackson argued in detail that AMICO <u>became</u> the manufacturer when it added the conveyor belt, funnel, wings, and safety bar to the leveler, thus essentially creating a "new machine" and making the leveler more dangerous.

In support of his argument, Jackson relied principally on one Alabama Supreme Court case, <u>Harris v. Gill</u>, 585 So. 2d 831, 836 (Ala. 1991), in which we held that "the term 'manufacturer' may include not only the original manufacturer (one who produces article for use or trade), but also a subsequent entity that <u>substantially</u> modifies or <u>materially</u> alters the product through the use of different components and/or methods of assembly." (Emphasis added.)

Twelve days after Jackson filed his response brief, the defendants filed a reply brief, responding in detail to this substantial-modification theory from the <u>Harris</u> decision. The defendants filed that reply brief at 10:00 p.m. -- the day before the summary-judgment hearing. At 9:00 a.m.

10

the following day, Jackson filed a motion to strike the relevant portions of the defendants' reply brief, which the circuit court granted.

As a result, the circuit court never had the opportunity to decide the merits of this substantial-modification theory. The trial court never heard or considered AMICO's arguments about whether the modifications were in fact "substantial" or whether the Harris decision was distinguishable.

### A. Why I Concur -- The Importance of Procedure.

In its amicus brief before this Court, the Alabama Association for Justice made the following observation about the timeliness of the defendants' reply brief:

> "[N]umerous issues were raised by the petitioner-defendants for the first time in their reply brief, which was filed the night before the summary judgment hearing. More new arguments were included for the first time in their mandamus petition. These tactics are a recurring problem for civil plaintiff practitioners, who are already under a tight timeline to respond to summary judgment motions (sometimes with only eight court days to do so) and file answers to a mandamus petitions (with only ten to fifteen court days to do so). It is neither fair nor right to allow civil defendants -- who always have at least a year or more to develop their summary judgment arguments -- to reduce the plaintiff's already significantly reduced time to respond."

Amicus brief of the Alabama Association of Justice at 8 (emphasis in

11

original).

Procedure matters. The parties deserve due process and thus deserve an opportunity to (1) know what the arguments and evidence against them are and (2) be able to respond to those arguments and evidence.[3] Procedure also matters on mandamus review.

I cannot determine from the materials before us whether one or all of the parties bear responsibility for not timely placing the substantial-modification argument before the circuit court. On the one hand, I find it difficult to read the operative complaint as making the assertion that AMICO <u>became</u> the manufacturer because of a "substantial" modification. Instead, the complaint appears to make a distinctly different assertion (that is, that the safety device was provided by someone else -- "manufacturer provided"). Perhaps this argument was made for the first time in the 55-page response brief filed by Jackson. If

---

[3]<u>See e.g.</u>, <u>Southampton 100, LLC v. Alabama Dep't of Revenue</u>, [Ms. SC-2025-0227, Nov. 26, 2025] ___ So. 2d. ___, ___ (Ala. 2025) (Cook, J., concurring specially) (highlighting the importance of both sides' being "afforded the opportunity to timely present their strongest arguments to the trial court"); <u>Hyundai Constr. Equip. Americas, Inc. v. Southern Lift Trucks, LLC</u>, 392 So. 3d 716, 729 (holding that, due to new, material allegations that a party made less than 30 minutes before the hearing on a contempt petition, defendants were not afforded due process).

this is accurate, it would be hard to fault the defendants for not guessing beforehand that Jackson was alleging that AMICO itself had become the manufacturer. Even if surprised, the defendants did not respond until the night before the hearing -- 12 days after receiving Jackson's brief.

On the other hand, perhaps the defendants were aware of this substantial-modification argument before the summary-judgment stage -- for instance, during the discovery process or through the statements in Jackson's expert report. In that case, the defendants should have raised this argument in their original motion (or at least immediately after receiving the response brief).

Regardless, we do not need to decide the issue because the defendants do not seek mandamus relief regarding the circuit court's order striking their reply brief. Nor do they attempt to explain why the circuit court's order to strike was improper. Further, we do not have the entire record before us.

Because the response to the substantial-modification argument was not before the circuit court and because the mandamus standard is high and includes the requirement that there be "'a clear legal right'" to relief and "'an imperative duty upon the respondent to perform, accompanied

by a refusal to do so,'" Ex parte Gulf Health Hosps., 321 So. 3d at 632 (citation omitted), it is not appropriate for us to issue a writ of mandamus at this time.

### B. What is Necessary to Transform a User of Equipment Into the Manufacturer?

By denying the petition for a writ of mandamus, our Court does not decide that AMICO became the manufacturer because of "substantial" modifications (or even that there is sufficient evidence for a jury to determine that it became the manufacturer). Instead, this case will go before the circuit court and may result in a jury trial where that question will need to be determined. If this occurs, the parties should think carefully about what jury charge will be appropriate regarding whether AMICO became the manufacturer via modification of the equipment. I observe that the Harris decision, although nearly 35 years old, appears to be the single case decided by this Court that gives any insight into the types of modifications that qualify as "substantial" or "material" in this context.

Should this case or a similar case return to our Court, I would urge the parties to devote attention to how the facts of their case compare to the facts of Harris. I would also urge the parties to consider (1) whether

14

some or all of the language used in <u>Harris</u> is dicta, (2) whether our caselaw since 1991 has been consistent with <u>Harris</u>, (3) whether the text of § 25-5-11(c)(2) is consistent with the substantial-modification rule and, if not, whether <u>Harris</u> should be reconsidered or limited to its facts, and (4) the importance of stare decisis as discussed below.[4]

### II. Our Caselaw Addressing the "Willful and Intentional Removal" of a Safety Device from a Machine May Be Inconsistent with the Language of the Act and Should be Revisited.

As explained previously, under the Act, an employee who suffers a workplace injury can bring a cause of action against a co-employee whose "willful conduct" contributed to the employee's injury. § 25-5-11(b). Although the Act provides several different definitions of what constitutes "willful conduct," the relevant definition here is the following:

---

[4]Although the defendants imply that we should overrule <u>Harris</u>, they do not expressly ask us to overrule <u>Harris</u>. <u>See</u> <u>Alabama Dep't of Revenue v. Greenetrack, Inc.</u>, 369 So. 3d 640 (Ala. 2022) (declining to overrule precedent when the parties did not expressly ask this Court to do so).

The defendants do make the additional argument that, even if AMICO could be the "manufacturer" because of any "substantial" modifications, there is no evidence indicating that the alleged safety guard was added at the time of the modifications. They argue that merely adding a safety guard <u>later</u> is not the same thing as the manufacturer providing a safety guard at the time of manufacture. I do not reach this question and leave it for future consideration.

"The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal ...."

§ 25-5-11(c)(2).

The defendants argue that our caselaw has developed an expansion of (1) what constitutes "removal" and (2) what conduct can be considered "willful and intentional" that is contrary to the plain meaning of the statute. They ask that we overrule some or all of this caselaw.

In response, Jackson and the amicus respondent, the Alabama Association of Justice, argue that (1) this is a mandamus petition and we should not overrule existing law on mandamus review and (2) there are multiple Alabama decisions applying these expanded interpretations and those cases should be respected under the doctrine of stare decisis.

Given the weight of these legitimate concerns and given the resolution of this petition, I do not believe it is necessary for me to reach the merits of these issues at the mandamus stage. However, I would encourage full briefing regarding these issues in a future appeal. I would especially encourage arguments regarding what factors should be considered if a party seeks to overrule potentially incorrect precedent involving the construction of a statute, including (1) whether our caselaw

16

on § 25-5-11(c)(2) has been consistent, (2) whether there are any reliance interests, and (3) whether the caselaw is "egregiously wrong." <u>Dobbs v. Jackson Women's Health Org.</u>, 597 U.S. 215, 293-94 (2022). I am particularly concerned with the arguments made by the amicus on for the need for stare decisis, especially for precedent involving the construction of a statute.

For the present, I will outline each of the major expansions in this caselaw and why future briefing will be helpful.

### A. "Removal."

First, Alabama cases have expanded the definition of "removal" to include, along with physical removal, the failure to install, the failure to maintain/repair, and the bypassing of a safety device.

For instance, in <u>Bailey v. Hogg</u>, 547 So. 2d 498, 500 (Ala. 1989), our Court held that the "willful and intentional <u>failure to install an available safety guard</u> equates to the willful and intentional <u>removal</u> of a safety guard for the purposes of ... § 25-5-11(c)(2)." (Emphasis added.) In reaching this conclusion, our Court reasoned that "[t]he same dangers are present when an available safety guard is not installed as are present when the same guard has been removed." <u>Id.</u> Because the legislature

17

recognized an "important public policy of promoting safety in the workplace," our Court reasoned that allowing an action for physical removal but not failure to install the same guard would "contravene[] that important public policy." Id. at 499-500.

Our Court next expanded the meaning of "removal" in Moore v. Reeves, 589 So. 2d 173 (Ala. 1991). Citing Bailey, our Court held that, because the same danger is also present in a situation where a present safety guard is not maintained, the "failure to maintain and/or repair a safety guard or device provided by the manufacturer … would be tantamount to the 'removal of' or the 'failure to install' a safety guard or device." Id. at 178 (emphasis added).

Finally, in Harris, supra, this Court recognized yet another new definition of removal. Again, citing Bailey, our Court held that "the act of 'bypassing' a safety device … is encompassed within the word 'removal.'" Harris, 585 So. 2d at 837 (emphasis added).

The defendants appear to argue that all of this caselaw is mistaken and that "removal" means an affirmative act and can only mean a

18

physical act.[5]

I only raise these issues for future consideration and take no position on the defendants' argument, the correctness or consistency of our caselaw, or whether the defendants can overcome stare decisis for some or all of the precedents.  See, e.g., Leader v. Pablo, 411 So. 3d 1234 (Ala. 2024); Murray v. Manz, 813 So. 2d 918 (Ala. Civ. App. 2001).

### B. "Willful and Intentional" Conduct.

Second, as to the mens rea requirement, § 25-5-11(c)(2) provides that the removal must be (1) "willful and intentional" and (2) done "with knowledge that injury or death would likely or probably result from the removal."

The defendants argue that our caselaw has diluted the language of the first requirement to sustain a lawsuit with only evidence of mere negligence.

---

[5]See e.g., Moore, 589 So. 2d at 179 (Maddox, J., dissenting) ("I cannot accept the majority's conclusion that the failure of the workman's employer to repair a car door locking mechanism constituted a 'willful and intentional removal from a machine of a safety guard or device.'"); Bailey, 547 So. 2d at 500 (Houston, J., dissenting) (citing the definition of "removal" and  recognizing that "[t]here is no evidence that the safety guard was removed from the machine by Hogg. For some unexplained reason, the guard was not installed …." (second emphasis added)).

In his answer, Jackson essentially argues that this first mens rea requirement has been completely written out of the caselaw:

"Moreover, the law <u>does not require</u> that the defendant intentionally and willfully remove the safety device (personally) or even that they were directly or actually aware of its removal to be liable under … § 25-5-11(c)(2)."

Answer at 28 (emphasis added).

Jackson's position seems difficult to reconcile with the literal text of the statute. The text explicitly states that the removal must be "<u>willful and intentional</u>." (Emphasis added.) The text likewise explicitly requires that the "<u>removal</u>" must have been "<u>with knowledge</u> that injury or death would likely or probably result <u>from the removal</u>." (Emphasis added.)

This Court's decisions in <u>Harris</u>, <u>supra</u>, and <u>Jackson v. Hill</u>, 670 So. 2d 917 (Ala. 1995), have introduced a "knew or should have known" formulation into this analysis. In <u>Harris</u>, the defendants did not dispute that they intentionally bypassed the safety device -- the only question was whether bypassing constituted removal and whether they had knowledge that the bypass created a danger. The Court said that those co-employees "<u>knew or should have known that the safety device had been bypassed</u> and, therefore, posed a safety risk for co-employees." 585 So. 2d at 837 (emphasis added). In that context, the Court's use of "should

20

have known" language might be understood as addressing only the second requirement of knowledge (that is, that "knowledge that injury or death would likely … result") once removal was conceded.

Jackson, though, takes that phrasing a step further. There, the supervisor did dispute that he had removed any device, yet our Court in Jackson quoted Harris and treated constructive knowledge as sufficient to satisfy the willfulness requirement. Jackson, 670 So. 2d at 918-19. That reading blurs the statute's distinction between intentional conduct and ordinary negligence, and it risks converting a narrow exception into a broad one.

In the ordinary course, negligence -- that is, a "knew or should have known" standard -- does not equal "willful and intentional" conduct. While this issue does not control today's outcome, in my view the proper mens rea standard under § 25-5-11(c)(2) deserves careful reconsideration. Any inconsistency in the relevant caselaw should also be considered. See, e.g., King v. Cape, 907 So. 2d 1066, 1074 (Ala. Civ. App. 2005). I thus invite parties in future appropriate cases to address these issues.

Conclusion

21

This case is before our Court on a petition for a writ of mandamus. In my view, our decision today is dictated by the high standard applicable to such petitions, and, thus, I concur. But I welcome future briefing in an appropriate appeal on the issues identified above regarding § 25-5-11(c)(2).