The plaintiff appeals from a judgment based on a directed verdict in favor of the defendants on the plaintiff's claims of negligent inspection and co-worker liability for the plaintiff's on-the-job injury.
Jesse Dwayne Haddock was employed as a production leadman for Rudy's Farm Company, and, as such, was responsible for supervising the operation of two Multivac sausage biscuit packaging machines. On July 24, 1991, Haddock was injured when he was attempting to clear a jam in the "forming" area of one of the machines. A co-worker turned the machine on without knowing that Haddock's arm was still in the forming area. The forming die began to operate and caught Haddock's left hand, causing it to be crushed. It was later discovered that the safety guard that covered the forming die area had been disengaged.
Haddock sued various defendants for damages for the injury to his hand. During the course of the lawsuit, the number of defendants was reduced to two: Multivac, Inc., and J.H. McClanahan. The trial court denied the defendants' motions for summary judgment, and the case proceeded to trial on *Page 971 
the theories of negligent inspection by Multivac and McClanahan's liability as a co-employee under § 25-5-11(c)(2), Ala. Code 1975. At the close of Haddock's evidence, the trial court directed verdicts for both defendants. Haddock appealed to the Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The standard for granting a directed verdict is the same as that for granting a summary judgment. Bazzel v. Pine PlazaJoint Venture, 491 So.2d 910 (Ala. 1986). A motion for a directed verdict is a method by which one party tests the sufficiency of the other party's evidence. Renfro v. GeorgiaPower Co., 604 So.2d 408 (Ala. 1992). While the burden is on the moving party to demonstrate that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law, if the plaintiff has failed to present substantial evidence of one or more elements of his claim, a directed verdict is proper. Norris v. Wal-Mart Stores, Inc.,628 So.2d 475 (Ala. 1993). To withstand a motion for a directed verdict, the nonmovant must have presented "substantial evidence," which is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Id. at 476, (citing West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989)). On appeal, this court must view the evidence in a light most favorable to the nonmovant and make such reasonable evidentiary inferences as the jury would be free to draw. Renfro, supra, at 411.
Haddock argues that he presented adequate evidence to create a genuine issue of material fact in regard to his co-employee liability claim against McClanahan. That claim is based on § 25-5-11(b) and (c)(2), which provide as follows:
 "(b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any . . . employee of the same employer . . ., the employee shall have a cause of action against the person. . . .
 "(c) As used herein, 'willful conduct' means any of the following:
". . . .
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer or the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
Haddock asserts that McClanahan, as director/supervisor of the maintenance department of Rudy's Farm, was responsible for the upkeep and safety of the Multivac machine that caused Haddock's injury. Under § 25-5-11(b) and (c), to succeed in his claim, Haddock must present substantial evidence that McClanahan willfully and intentionally removed from the machine a safety guard provided by the manufacturer with knowledge that injury would likely or probably result from the removal. Harrisv. Gill, 585 So.2d 831 (Ala. 1991).
In Harris, our Supreme Court held that the intentional and willful "bypassing" of a safety device designed to prevent injury was conduct "encompassed within the word 'removal' " in § 25-5-11(c)(2). Id. at 831. Likewise, in Bailey v. Hogg,547 So.2d 498 (Ala. 1989), the Court held that an employer's willful and intentional failure to install a safety guard that had been delivered to the employer along with the machinery was the equivalent of intentional removal of a safety guard. And inMoore v. Reeves, 589 So.2d 173 (Ala. 1991), the Court determined that a willful and intentional failure to repair a safety device that the employer had notice was malfunctioning constituted "removal" within the meaning of the statute.
Haddock also relies on Smith v. Wallace, 681 So.2d 1034
(Ala. 1995), in which the Court determined that there was substantial evidence in support of a "willful removal" claim, and stated that "Wallace, by virtue of his position as the shop and field maintenance *Page 972 
superintendent, was responsible for '[monitoring the plant] for unsafe conditions and potential hazards [and for directing] corrective action.' " Id. at 1037.
The record indicates the following: There is no dispute that there was a safety guard that covered the "forming die area" — the area where Haddock's hand was crushed — and that the guard had been bypassed or disengaged by a jumper wire; nor is there any dispute that, if the guard had been working properly, Haddock's injury would have been avoided. If the guard was working properly, the machine was to shut down if the guard was removed. There is no evidence as to when the bypass wire was installed. The evidence did indicate that the machine was transferred to the Rudy's Farm plant in Florence on February 1, 1990, from a plant in Iowa. The evidence is in dispute as to whether the machine went into production in February or in March. Several workers from the plant testified that they never saw the machine operate with the guard working and that the guard was disengaged from the time the machine went into operation. McClanahan and Keith Hester, the only other maintenance department employee to testify, both testified that they were unaware that the guard did not work. However, Ricky Berry, a machine operator at Rudy's Farm, testified that he saw maintenance personnel watch the machine operating with the guard off when they were setting up the machine.
McClanahan testified that he knew safety guards are important and knew that injury or death can result if they do not function properly. McClanahan testified that he delegated the hands-on maintenance to the employees working in his department and that he did not check their maintenance schedules to ensure that they were maintaining the safety devices. He stated that he gave them the maintenance schedule manuals and entrusted them to properly perform the required maintenance, but that he never checked their records or asked them whether they were performing maintenance checks. In holding that a plaintiff's supervisors could be liable for failing to repair a safety device, the Court inMoore stated, "To hold otherwise would allow supervisory employees to neglect the maintenance and repair of safety equipment provided to protect co-employees from injury, which by its very nature is a clear violation of public policy."Moore, supra, at 178-79. Thus, viewing the evidence in a light most favorable to Haddock, we believe that a genuine issue of material fact existed regarding Haddock's claim under §25-5-11(c)(2), and, therefore, we conclude that the trial court erred in directing a verdict as to that claim.
Haddock further argues that the trial court erred in entering a directed verdict for Multivac, Inc., on his claim of negligent inspection. In a negligent inspection case, the plaintiff bears the burden of proving 1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection, 2) the scope of that duty, 3) that that duty was breached, 4) that the plaintiff suffered an injury, and 5) that the injury was proximately caused by that breach.Clark v. Floyd, 514 So.2d 1309, 1314 (Ala. 1987) (citing,Fireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334, 349
(Ala. 1980) (Jones, J., concurring); United States Fidelity Guaranty Co. v. Jones, 356 So.2d 596 (Ala. 1977)). Thus, to defeat the motion for a directed verdict, Haddock was required to present substantial evidence of those elements.
Haddock correctly points out that one who acts on his own volition, although under no duty to act, is charged with the duty of acting with reasonable care and is liable for harm caused by his or her failure to use reasonable care.Bowden v. E. Ray Watson Co., 587 So.2d 944 (Ala. 1991). Haddock argues that there was substantial evidence indicating that Multivac had assumed the duty to inspect the Multivac machine for safety and that the inspection was negligently done.
In regard to this issue, the record indicates that on February 26, 1990, shortly after the machine arrived from the Iowa plant, Nelson Shriver, a Multivac employee, repaired a water leak on the Multivac machine that later injured Haddock in July 1991. Shriver testified that, to perform that repair, he had to remove both of the forming guards. He testified that any time he removed a guard, *Page 973 
he would check a number on a diagnostic screen that would indicate whether the guard was working. He stated that, when he repaired the machine in question, he determined that the safety switches were functioning properly. He stated that he did not check the machine's wiring to ensure that it was functioning properly.
Haddock argues that, because Shriver checked the guards to see that they were operating, he assumed the duty to inspect the machine for the safety of the Rudy's Farm employees. In support of his claim that Shriver breached his assumed duty of inspection, Haddock emphasizes the testimony of Dr. Jeff Warren, a mechanical engineer, who testified on his behalf. Warren testified that, based on his assumption that the bypass wire had been installed before Shriver's service visit, if Shriver had followed Multivac's repair checklist, he would have discovered the bypass wire. Haddock also asserts that Shriver's statement that he checked the guards via the diagnostic lights and the fact that he did not state that he turned the machine on and lifted the guard to test it is evidence that he negligently performed the assumed inspection.
It appears that the disposition of this case turns on the issue of duty, more specifically the scope of any duty assumed by Shriver. We believe that the evidence established genuine issues of material fact regarding the scope of the duty assumed by Shriver when he inspected the guards; i.e., whether Shriver's inspection created a duty to Rudy's Farm employees and, if so, whether he used reasonable care in carrying out any duty he assumed. Thus, there is substantial evidence in support of Haddock's claim, and the directed verdict was improper.
The trial court's judgment directing a verdict in favor of each of the defendants is reversed, and the cause is remanded.
REVERSED AND REMANDED.
THIGPEN, YATES, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.