890 So.2d 968 (2004)
Ex parte Phillip A. CANADA.
(In re Phillip A. Canada
v.
Vic Goode).
1021732.
Supreme Court of Alabama.
January 9, 2004.
As Modified on Denial of Rehearing March 26, 2004.
Michael C. Bradley of Pittman, Hooks, Dutton, Kirby & Hellums, P.C., Birmingham, for petitioner.
*969 Paul P. Bolus and Stephen J. Bumgarner of Burr & Forman, LLP, Birmingham, for respondent.
Ed R. Haden and Scott B. Grover of Balch & Bingham, LLP, Birmingham, for amicus curiae Business Council of Alabama, in support of the respondent's application for rehearing.
LYONS, Justice.
The Court of Civil Appeals affirmed, without opinion, the trial court's summary judgment in favor of Vic Goode in Phillip A. Canada's action against the manufacturer of a table saw and several of his co-employees alleging that his co-employees were liable for the failure to maintain a safety device. Canada v. Goode (No. 2020038, July 3, 2003), ___ So.2d ___ (Ala.Civ.App.2003) (table). We granted the petition for the writ of certiorari, and we now reverse the Court of Civil Appeals' judgment and remand the case to that court.
On October 24, 1997, while employed as an installer at UNR-ROHN, Inc. ("Rohn"), Canada suffered severe lacerations and fractures to his right hand while operating a table saw. Canada received workers' compensation benefits from Rohn. Canada sued Jet Equipment & Tools, Inc. ("Jet Equipment"), the manufacturer of the table saw, alleging breach of various warranties. Canada also sued Vic Goode, the shift supervisor at Rohn; Tim Sloan, the shift leadman; Terry Goodwin, the plant supervisor; and Walker Bragan, the manufacturing manager, based upon the theory that the co-employees were liable because, Canada alleged, they had removed a safety device. See § 25-5-11(c)(2), Ala.Code 1975 (defining "willful conduct" to include "[t]he willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal").
Jet Equipment filed a motion for a summary judgment arguing that Canada could not meet his burden of proof under the Alabama Extended Manufacturer's Liability Doctrine. All the co-employee defendants also filed motions for a summary judgment arguing that Canada could not prove the elements of § 25-5-11(c)(2). The trial court entered a summary judgment as to Jet Equipment, Bragan, and Sloan and denied the summary-judgment motions as to Goodwin and Goode.
Goodwin and Goode renewed their motions for a summary judgment, citing the same grounds as they had cited in their previous motions. In response, Canada argued that Goode had specific safety responsibilities that included inspecting the saw on a daily basis. According to Canada, the plant manager instructed Goode to ensure that the safety guards on the plant's machinery were in place at the beginning of each of the three shifts at Rohn. Canada also referred to Goode's deposition testimony in which Goode said that the table saw was used throughout all three shifts at the plant and that the guard on the saw had to be replaced on a regular basis. Goode also described how the guard should have appeared on the table saw on the day of Canada's accident:
"First, the guard was bolted from the back of the saw and came over the front of the saw, over the blade, had two [Plexiglas] sides on it, and then it had two metal arms that were anti-kickback devices, spring-loaded, with teeth on them, to keep anything from kicking back."
However, in contrast to Goode's testimony, Canada stated in his deposition that, on the day of his injury and on other days on which he had operated the table saw, there was a piece of acrylic plastic only on the *970 left side of the blade, and there was nothing covering the right side of the blade. The trial court ultimately entered a summary judgment as to both Goodwin and Goode. Canada appealed to the Court of Civil Appeals only as to the summary judgment in favor of Goode. The Court of Civil Appeals affirmed the trial court's judgment. This Court granted Canada's petition for certiorari review.

I. Standard of Review
This Court reviews a summary judgment by the same standard applicable to the trial court in deciding to grant or deny the summary judgment. Sessions v. Espy, 854 So.2d 515 (Ala.2002). We must "`determin [e] whether the evidence presented to the trial court created a genuine issue of material fact'" and whether the moving party is entitled to prevail as a matter of law. Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000)); Rule 56(c), Ala.R.Civ.P. See also American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala.2002). Also, as we recently reiterated in Wilson v. Manning, 880 So.2d 1101 (Ala.2003), "`[o]ur review [of a summary judgment] is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.'" (Quoting Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).) Canada contends that the Court of Civil Appeals failed to apply the foregoing standard correctly in its review of the trial court's summary-judgment order. We agree.

II. Did Canada present a genuine issue of material fact
Canada is required to prove the elements of § 25-5-11(c)(2) to establish a prima facie case of co-employee liability for the removal of a safety device. Goode contends that the evidence in this case is undisputed and that Canada cannot prove the required elements under § 25-5-11(c)(2). Canada asserts that he has established a genuine issue of material fact as to whether Goode knew that the guard was missing from the table saw at the time of Canada's injury. Goode's contentions that Canada's evidence is insufficient to establish a genuine issue of material fact are based upon (a) the absence of evidence of Goode's intent to injure Canada, (b) Canada's alleged failure to prove that the safety guard Goode is charged with removing was provided by the manufacturer, and (c) Canada's alleged failure to prove that Goode's conduct constitutes the willful and intentional removal of a safety guard or safety device from a machine.

A. Evidence of Intent to Injure
Goode seeks to uphold the trial court's summary judgment by contending that Canada cannot prove that Goode intended to injure him. However, § 25-5-11(c)(2) defines "willful conduct" in the context of the removal of a safety guard or safety device from a machine; it does not require proof of an intent to injure the employee. Section 25-5-11(c)(2) states:
"(c) As used herein, `willful conduct' means ...
"....
"(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done *971 for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
Section 25-5-11(c)(1) defines "willful conduct" in contexts other than the removal of a safety guard or safety device from a machine:
"(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of `willful conduct.'"
(Emphasis added.) To establish co-employee liability, Canada is not required under § 25-5-11(c)(2) to prove that Goode had an intent to injure him. See Pettibone v. Tyson, 794 So.2d 377, 379 (Ala.2001); Haisten v. Audubon Indem. Co., 642 So.2d 404 (Ala.1994).

B. Evidence that the Manufacturer Provided Safety Guards
Goode argues for the first time on appeal that Canada's claims should fail because, he argues, Canada cannot prove that the safety guard he is accused of removing was provided by the manufacturer. Section 25-5-11(c)(2) provides that willful conduct includes removing "a safety guard or safety device provided by the manufacturer of the machine...." (Emphasis added.) See also Murray v. Manz, 813 So.2d 918, 921-22 (Ala.Civ.App.2001) (affirming a summary judgment in favor of a co-employee because the plaintiff failed to establish that the safety device had been provided by the manufacturer). Goode did not advance this argument to the trial court in support of his motion for a summary judgment. We have previously stated that "this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court." Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). However, this Court may not affirm a summary judgment on a ground the movant did not argue before the trial court because the nonmovant was not given an opportunity to present substantial evidence creating a genuine issue of material fact as to that ground. Liberty National, 881 So.2d at 1020. Because Canada did not have the opportunity to rebut Goode's argument regarding whether the safety guard was provided by the manufacturer, we will not consider that issue on appeal.

C. Evidence of the Willful and Intentional Removal from a Machine of a Safety Guard or Safety Device
Canada contends that his evidence creates a genuine issue of material fact as to whether Goode willfully and intentionally removed a safety device, relying upon Haddock v. Multivac, Inc., 703 So.2d 969 (Ala.Civ.App.1996), and the cases cited therein. In Haddock, the co-employee defendant admitted that he was responsible for the upkeep and safety of the machine on which the plaintiff was injured, but denied that he was aware that the safety guard on the machine had been disengaged. The trial court directed a verdict in favor of the co-employee. The Court of Civil Appeals reversed the trial court's judgment. The Court of Civil Appeals in Haddock looked to whether the nonmovant, the plaintiff, presented substantial evidence to submit the case to a jury, i.e., "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved.'" Haddock, 703 So.2d at 971 (quoting West v. Founders Life Assurance *972 Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
In analyzing the plaintiff's evidence in Haddock, the Court of Civil Appeals relied on Moore v. Reeves, 589 So.2d 173 (Ala.1991), and Smith v. Wallace, 681 So.2d 1034 (Ala.1995). In Moore, this Court held that a supervisor is guilty of the willful and intentional removal of a safety device under § 25-5-11(c)(2) if the supervisor fails to repair a safety device. 589 So.2d at 178.
"To hold otherwise would allow supervisory employees to neglect the maintenance and repair of safety equipment provided to protect co-employees from injury, which by its very nature is a clear violation of public policy."
Moore, 589 So.2d at 178-79. In Wallace, this Court held that co-employees who, by virtue of their supervisory roles, would have known that the failure to repair a safety device would cause an injury were subject to liability under § 25-5-11(c)(2). 681 So.2d at 1037. Based on those prior cases, the Court of Civil Appeals in Haddock held that the conflicting evidence on the issue whether maintenance personnel were aware of the inoperative condition of a guard established a genuine issue of material fact as to whether the co-employee had properly inspected the guard on the machine.
Canada presented testimony from Bragan indicating that Goode's duties included inspecting the department's equipment daily and ensuring that the safety guards were in place. Canada presented Goode's own testimony that he inspected the machines at the start of each day to ensure that the machines were operating properly and safely. Goode testified that the guard on the table saw regularly became worn or damaged. Goode also gave a detailed description of a safety guard that covered both sides of the table saw's blade when the saw was being properly maintained. Goode stated that the guard consisted of two pieces of acrylic plastic that could be raised separately and two spring-loaded metal arms to keep the object being cut from kicking back and striking the operator of the table saw. However, Canada testified that on the day he was injured there was a piece of acrylic plastic dangling on the left side of the blade and that nothing was covering the right side of the blade.
Goode responds that Canada has never seen what a safety guard should look like. The fact that Canada has never seen a properly maintained safety guard does not eliminate Goode's responsibility to make sure that an appropriate guard is on the table saw at the start of the day. Furthermore, Canada's ignorance of the components of a properly maintained safety guard only adds weight to the evidence indicating that there was no adequate safety guard on the machine on the day of Canada's accident.
In its no-opinion affirmance, the Court of Civil Appeals cited Raines v. Browning-Ferris Industries of Alabama, Inc., 638 So.2d 1334 (Ala.Civ.App.1993), a case in which the plaintiff sued his co-employee alleging that he had been injured as a result of the co-employee's willful conduct under § 25-5-11(c)(2). After a hearing at which evidence was presented ore tenus, the trial court ruled against the plaintiff. The Court of Civil Appeals affirmed the trial court's judgment and stated that the evidence produced at the trial could not establish the co-employee's liability under § 25-5-11(c)(2).
Canada argues that Raines is not controlling because in this case the trial court entered a summary judgment whereas in Raines the trial court made findings after hearing ore tenus evidence. While it is true that the cases differ in that respect, a more compelling basis for distinguishing *973 Raines is the fact that the evidence on a pivotal issue was undisputed in Raines and conflicting in this case, the same circumstances present in Haddock.
Raines is distinguishable from the present case on the question whether the evidence indicating that the co-employee had knowledge of the defective safety guard is in dispute. In Raines, the plaintiff was injured when the door of a truck he was driving opened and he fell out of the truck. The supervisory defendants submitted affidavits and testimony from the company's employees that "company officials had no knowledge of any problems with the door [of the truck]; that the daily reports, compiled by the truck's drivers, did not indicate any door problem immediately prior to Raines's accident." 638 So.2d at 1338. Furthermore, an independent mechanic found no problem with the door immediately after Raines's accident. The Court of Civil Appeals distinguished Raines from Moore v. Reeves, where the evidence was undisputed that the supervisors had knowledge of the defective vehicle door. The opinion in Raines does not reflect that the plaintiff offered any evidence to dispute the supervisors' claims that they had no knowledge that door was defective.
In the present case, while Goode presented evidence that he had no knowledge that the safety guard on the table saw was missing or improperly maintained before and/or after Canada's accident, Canada's testimony paints an entirely different picture. Canada has presented testimony from Goode indicating that Goode inspected the table saw daily to ensure that the saw was safe and operable. As previously noted, Canada's and Goode's descriptions of the configuration of safety guards on the saw on the day of the injury varied greatly. Accordingly, Raines, in which the plaintiff did not contradict the co-employees' evidence indicating that they had no knowledge of the failure to maintain the safety device  the door of the truck  cannot serve as a basis for affirming the trial court's summary judgment. Goode's evidence indicating that he lacked knowledge that the condition of the safety guard on the saw was improper is directly contradicted by Canada's testimony. Based upon these differing descriptions and in light of our previously noted obligation to review the record in a light most favorable to the nonmovant, while resolving all reasonable doubts against the movant, we conclude that a jury should be given the chance to weigh the testimony of the witnesses and determine their credibility regarding the existence and condition of the safety guard on the day of Canada's accident and the extent of Goode's knowledge of the condition of the safety guard. Canada presented sufficient evidence to the trial court to create a genuine issue of material fact as to whether Goode's conduct falls within § 25-5-11(c)(2). Of course, we deal only with whether a jury question is presented, leaving to the jury the decision of whether liability is appropriate under the evidence presented at trial.

III. Conclusion
The trial court erred in entering a summary judgment in favor of Goode. Therefore, we reverse the judgment of the Court of Civil Appeals and remand the cause for that court, in turn, to remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.
HARWOOD, J., concurs specially.
SEE, BROWN, and STUART, JJ., dissent.
*974 HARWOOD, Justice (concurring specially).
I concur fully in the main opinion. I write only to point out that neither the record nor the briefs shed any light on exactly when Phillip A. Canada was injured by the table saw. We know only that on the occasion of the injury, Canada was voluntarily working overtime on a Saturday morning shift, which began at 5:00 a.m.; that initially Canada worked "outside" in the mechanical-installation department; that "later" someone asked him to cut a piece of styrofoam material; and that he then attempted to do so and was injured while operating the table saw. Vic Goode testified that the required safety guard was on the table saw when he made his pre-shift inspection of the table saw that morning. That guard would have covered the front of the blade with two acrylic plastic shields guarding the sides of the blade. Canada's testimony was that when he undertook to use the table saw, there was no shield or guard protecting it, but rather just a "little piece that was dangling" on the left side of the blade, and that the right side of the blade was completely exposed.
Goode testified that the table-saw guard regularly became worn or damaged and had to be replaced. The record reflects that the table saw was used with great frequency.
If there was evidence in the record of a significant time lapse between Goode's pre-5:00 a.m. inspection and Canada's "later" injury, allowing for the possibility of damage to the guard by another co-employee in the interim, I might take a different view of things.
I write simply to emphasize that a supervisory employee who has the duty to inspect safety devices and who testifies that he or she properly performed the inspection at the appointed time will not automatically be denied a summary judgment just because a defect in the device later manifested itself. It is the particular facts of each case that will control.